## ALICE BEAVER v. TOWN OF CHINA GROVE.

(Filed 4 November, 1942.)

**1. Municipal Corporations § 14—**

A municipality is liable for the negligent failure to maintain its streets in a reasonably safe condition, but is not an insurer of the safety of travelers thereon.

**2. Same—**

It is a general rule that, in cases of exceptional danger, as where construction work is being performed in a street, of which the traveling public has full knowledge, the exercise of reasonable care means the exercise of such care as is commensurate with the exigencies of the occasion—the rule of the prudent man.

**3. Same: Negligence § 19a—**

Where an automobile was being driven on a public street, which was under construction and that fact known to the driver, who ran the car into a manhole protruding about two feet above the surface in the middle of the street with a driveway on each side and which could be seen for a hundred yards, resulting in injuries to a passenger, motion for judgment of nonsuit should have been granted, in an action for damages by the passenger against the town.

APPEAL by defendant from *Nettles, J.,* at May Term, 1942, of ROWAN.

Civil action to recover damages for personal injuries sustained by plaintiff on one of the public streets of the defendant town.

The record discloses that on the morning of 4 December, 1940, plaintiff and several other workers on the night shift in the Cannon Mills at Kannapolis were returning to their homes in China Grove in an automobile owned and operated by a fellow worker, Ray Albright, when plaintiff was thrown against the windshield, sustaining an injury to her left eye, as the car came to a sudden stop by striking a manhole in the center of Liberty Street. The time was approximately 7:30 a.m. (E. S. T.). It was daylight; the weather dry and clear.

Most of the streets of China Grove were under repair at the time. The town was engaged in a WPA project which involved the regrading of Liberty Street, an unimproved street approximately 30 feet in width. The street had been graded down on both sides, leaving a ridge of loose dirt and the manhole in the center, which was approximately 24 inches above the road level on either side. There were driveways on both sides of the manhole. The grading machine had cut the dirt somewhat on an incline up to the manhole. The top of the manhole and the brick and mortar construction were sticking up at least 12 or 14 inches above the dirt, brick and cast iron. The cast iron ring was 9 or 10 inches higher than the brick.

Ray Albright testified: "I had driven over this street the night before. . . . It was rough but I got past the place to the side of it without hitting the manhole. They had been working on all the streets and had rough roads all over town. You had to pick out the best spots and take it as you came to it. . . . There were not any caution signs or signals on the street anywhere. About the middle of Liberty Street I let Mr. Bost (one of the passengers) out of the car. That was about 30 feet from where the accident occurred. As I came from the curb out into the road, got the car started and changed to second gear, it hit the manhole. . . . I was traveling between 15 and 20 miles an hour. There was a road (passage way) on either side of the manhole. . . . I didn't see the manhole. . . . The brim of the axle hit it. . . . The axle of my car is about 10 inches from the ground. . . . The dirt around the manhole was soft and the car sunk down, which caused it to hit. . . . The top of the manhole was about a foot and a half across, built of brick. . . . The surface of the street on either side of the manhole seemed to be in good condition."

A. T. Bost, witness for plaintiff, testified: "I reside on Liberty Street. . . . The traffic moved on each side of the street. It was higher in the middle of the street where the manhole was. . . . On December 4th the manhole stuck up high enough that an automobile wouldn't pass over it. . . . Dirt was sticking up around the manhole. (Cross-examination.) I was about 100 yards away and saw the driver strike the manhole. . . . You could see it all the way from the highway (a distance of 600 feet). . . . It was sticking up above the level of the street like a sore thumb. On either side of it was a driveway that had been scraped out. . . . Anybody with normal vision could see the manhole a 100 yards away."

From verdict and judgment for plaintiff, assessing her damages at $500, the defendant appeals, relying chiefly upon its demurrer to the evidence.

*C. P. Barringer for plaintiff, appellee.*
*Linn & Linn for defendant, appellant.*

STACY, C. J. In the circumstances disclosed by the record, it would seem that the demurrer to the evidence should have been sustained, if not upon the principal question of liability, then upon the ground of insulated negligence. *Oliver v. Raleigh,* 212 N. C., 465, 193 S. E., 853; *Chinnis v. R. R.,* 219 N. C., 528, 14 S. E. (2d), 500; *Butner v. Spease,* 217 N. C., 82, 6 S. E. (2d), 808.

There is no debate as to the liability of a municipality for the negligent failure to maintain its streets in a reasonably safe condition, *Ferguson v. Asheville,* 213 N. C., 569, 197 S. E., 146, albeit the municipality

is not an insurer of the safety of travelers upon its streets. *Watkins v. Raleigh,* 214 N. C., 644, 200 S. E., 424; *Houston v. Monroe,* 213 N. C., 788, 197 S. E., 571; *District of Columbia v. Moulton,* 182 U. S., 576; *Walker v. Wilson, ante,* 66.

It is likewise conceded that ordinarily one may assume the public streets to be in a reasonably safe condition. But this principle is not applicable here. *Welch v. McGowan,* 262 Mo., 709, 172 S. W., 18. The driver of the car in which plaintiff was riding had actual knowledge of the condition of the street, that it was then under repair.

It is a rule of general observance that in cases of exceptional danger, as where, for example, construction work is being performed in a street, of which the traveling public has full knowledge, the exercise of reasonable care, under such circumstances, means the exercise of such care as is commensurate with the exigencies of the occasion. McQuillin Municipal Corporations (2d), Vol. 7, p. 263; *Quirk v. Bradley Contracting Co.,* 161 N. Y. Sup., 296. The accepted standard under varying conditions is the conduct of the reasonably prudent man. *Cole v. R. R.,* 211 N. C., 591, 191 S. E., 353. "The standard is always the conduct of the reasonably prudent man, or the care which a reasonably prudent man would have used under the circumstances. *Tudor v. Bowen,* 152 N. C., 441, 67 S. E., 1015. The rule is constant, while the degree of care which a reasonably prudent man exercises varies with the exigencies of the occasion." *Diamond v. Service Stores,* 211 N. C., 632, 191 S. E., 358; *Meacham v. R. R.,* 213 N. C., 609, 197 S. E., 189.

The only allegation of negligence against the town of China Grove is, that it failed to warn the traveling public of the hazardous condition of the street. Even so, the driver of the car had driven over this street the night before. He knew the manhole was there. He does not say that he could not see it—only that he did not see it. As observed by the Supreme Judicial Court of Maine in *Lane v. Lewiston,* 91 Me., 292, "No one needs notice of what he already knows," and "knowledge of the danger is equivalent to prior notice." *Gorham v. Ins. Co.,* 214 N. C., 526, 200 S. E., 5.

It follows, therefore, that as the driver of the car in which plaintiff was riding had actual knowledge of the condition of the street and could see the manhole "sticking up above the level of the street like a sore thumb," the proximate cause of plaintiff's injury must be attributed to the negligence of the driver of the car. *Butner v. Spease, supra.* He says the roads were rough all over town, "you had to pick out the best spots and take it as you came to it." There was a safe way to pass without hitting the manhole. *Groome v. Statesville,* 207 N. C., 538, 177 S. E., 638. The record impels the conclusion that the active negligence of the driver was the real, efficient cause of the plaintiff's injury.

*Smith v. Sink,* 211 N. C., 725, 192 S. E., 108, and cases there assembled. Reversed.